**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**STACEY ZAYAS o/b/o K.K.,**

**Plaintiff,**

**v.** **Case No.: 8:25-cv-02885-AAS**

**KILOLO KIJAKAZI,**
**Acting Commissioner,**
**Social Security Administration,**

**Defendant.**
**_________________________________________/**

**ORDER**

Stacey Zayas, on behalf of her minor grandchild, K.K., requests judicial review of the Commissioner of Social Security's (Commissioner) decision denying K.K.'s claim for Supplemental Security Income (SSI). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the parties' memoranda, the Commissioner's decision is **AFFIRMED**.

## I. Background

### A. Procedural Background

On January 10, 2022, Ms. Zayas applied for SSI on behalf of K.K., claiming disability beginning June 1, 2021. (Tr. 67, 179, 181–86). Disability examiners denied Ms. Zayas's application initially and on reconsideration. (Tr.

68–73, 75–82). Ms. Zayas requested and received an administrative hearing before the ALJ, which was held on September 25, 2024. (Tr. 170–73). On November 4, 2024, the ALJ issued a decision finding K.K. not disabled. (Tr. 21–36). The Appeals Council denied Ms. Zayas's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 8–13). Ms. Zayas now requests review of the Commissioner's final decision. (Doc. 1).

### B. Factual Background

K.K. was four years old on his application date, January 10, 2022, and seven years old on the date of the ALJ's decision, November 4, 2024. (Tr. 31, 68, 181). Ms. Zayas alleged K.K. was disabled due to kidney issues, scoliosis, autism, oppositional defiant disorder, and attention deficit hyperactivity disorder (ADHD). (Tr. 68, 210).

## II. The Disability Evaluation Process for Children

An individual "under the age of 18 [is] consider[ed] . . . disabled if [the individual] ha[s] a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906; *see* 42 U.S.C. § 1382c(a)(3)(C)(i). When determining whether

an individual under the age of eighteen is disabled, an ALJ must follow the three-step sequential inquiry outlined in the Code of Federal Regulations (Regulations), determining as appropriate whether (1) the claimant is engaging in substantial gainful activity; (2) the claimant has a severe impairment or combination of impairments; and (3) the impairment(s) meet, medically equal, or functionally equal any of the impairments outlined in the Listings. 20 C.F.R. § 416.924; *see also Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278–79 (11th Cir. 2004) (explaining the three-step sequential evaluation process for children); *Banks ex rel. Hunter v. Comm'r of Soc. Sec. Admin.*, 686 F. App'x 706, 712 (11th Cir. 2017).

With respect to the analysis conducted at step three, an ALJ considers the combined effect of all medically determined impairments, even those that are not severe. 20 C.F.R. §§ 416.923, 416.924a(b)(4), 416.926a(a) and (c). The ALJ then looks to "objective criteria set forth in [the Regulations]" to determine whether the impairment(s) cause severe and marked limitations. *Shinn*, 391 F.3d at 1278. The Regulations contain the Listings "specifying almost every sort of [impairment] from which a person can suffer, sorted into general categories." *Id.* (citing 20 C.F.R. § 416.925(a)). Each listed impairment contains a discussion of the different limitations on the child's abilities that the impairment may impose. *Id.* (citing 20 C.F.R. § 416.925(a)).

Limitations appearing in the Listings "are considered 'marked and severe.'" *Id.* (citing 20 C.F.R. § 416.925(a)). Limitations resulting from a child's impairment(s) meet "the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment." *Id.* Limitations resulting from a child's impairments medically equal "the Listings if the child's limitations 'are at least of equal medical significance to those of a listed impairment.'" *Id.* (quotation omitted); *see* 20 C.F.R. § 416.926).

Even if the child's limitations do not medically equal the Listings, "the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings." *Id.* To make that determination, "the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities," using "six major domains of life[.]" *Id.* Those domains are:

> (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for [one]self; and, (vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1); *see also T.R.C. v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 914, 918 (11th Cir. 2014) (citation omitted). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked limitations in two of the domains [above], or an extreme limitation in one

domain.'" *Shinn*, 391 F.3d at 1279 (quoting 20 C.F.R. § 416.926a(d) and citing 20 C.F.R. § 416.925(a)).

### III. The ALJ's Decision

The ALJ followed the required three-step sequential evaluation process for children. (Tr. 24–31). At step one, after recognizing that K.K. was a preschooler on the date the application was filed and is currently school-aged, the ALJ determined that K.K. had not engaged in substantial gainful activity since January 10, 2022, the application date. (Tr. 25). Next, at step two, the ALJ found K.K. had these severe impairments: ADHD; autism disorder; idiopathic scoliosis; renal agenesis; oppositional defiance disorder; and anxiety. (*Id.*).

At step three, the ALJ found that K.K. did not have an impairment or combination of impairments that functionally equals the severity of the Listings. (Tr. 26). In terms of the six major domains of life, the ALJ ascertained the following: K.K. has less than a marked limitation in the domains of acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; ability to care for himself; and health and physical well-being. (*Id.*). Accordingly, the ALJ found that K.K. does not have an impairment or combination of impairments that functionally equals a listing, because K.K. does not have either "marked"

limitations in two domains of functioning or "extreme" limitation in one domain of functioning." (Tr. 31).

The ALJ concluded that K.K. has not been disabled as defined in the Social Security Act, since January 10, 2022, the date the application was filed, through the date of the decision. (*Id.*); *see* 20 C.F.R. §§ 416.330, 416.335; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (explaining SSI appeal "require[d] a showing of disability between [claimant's SSI application date] and the date of the ALJ's decision").

## IV. Standard of Review

This Court reviews the Commissioner's final decision as to disability under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S.

389, 401 (1971)); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019); *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); *see also McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (per curiam); *see also Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020).

## V. Discussion

Ms. Zayas raises two issues on appeal: (1) whether the ALJ's findings as to K.K.'s limitations in the domains of attending and completing tasks, interacting and relating with others, and the ability to care for oneself are supported by substantial evidence (Doc. 19, pp. 3–20), and (2) whether the ALJ properly considered the testimony of K.K.'s grandmother. (*Id.*, pp. 20–25). In response, the Commissioner contends that substantial evidence supports the

ALJ's findings with respect to the three domains at issue and that the ALJ properly evaluated the subjective statements. (Doc. 22, pp. 4–20).

### A. K.K.'s limitations in the domains of attending and completing tasks, interacting and relating with others, and the ability to care for oneself.

#### 1. Attending and Completing Tasks

The domain of attending and completing tasks considers how well a child can focus and maintain his attention, and how well he begins, carries through, and finishes his activities, including the pace at which he performs activities and how easily he changes them. 20 C.F.R. § 416.926a(h). The regulations explain that a preschool-age child (ages three to six) should be able to pay attention when spoken to directly, sustain attention during play and learning activities, and concentrate on tasks such as assembling puzzles or completing art projects. 20 C.F.R. § 416.926a(h)(2)(iii). The child should also be able to focus long enough to do many more things by himself, such as getting his clothes together and dressing himself, feeding himself, and putting away his toys. *Id.* The child should usually be able to wait his turn and change his activity when a caregiver or teacher says it is time to do something else. *Id.*

A school-age child should be able, among other things, to: focus his attention in a variety of situations to follow directions, remember and organize his school materials, and complete classroom and homework assignments, as

well as concentrate on details and not make careless mistakes in his work (beyond what would be expected in other children of similar age who do not have impairments); change his activities or routines without distracting himself or others, and stay on task and in place when appropriate; sustain his attention well enough to participate in group sports, read by himself, and complete family chores; and complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. 20 C.F.R. § 416.926a(h)(2)(iv).

The ALJ found that K.K. has a less than marked limitation in this domain. (Tr. 29). In finding that K.K. had less than a marked limitation in attending and completing tasks, the ALJ noted that K.K. had not repeated a grade and had average intellectual functioning. (Tr. 29, 705–06). The ALJ discussed teacher questionnaires completed by K.K.'s pre-kindergarten teacher, Jordan Burke, and his kindergarten teacher, Charlene Linares. (Tr. 27–28, 227–34, 288–95). In a February 2022 questionnaire, Mr. Burke rated the severity of K.K.'s problems with functioning in thirteen activities in the domain of attending and completing tasks. (Tr. 229). Mr. Burke did not observe a "serious problem" or a "very serious problem" with respect to any of the activities in this domain. (*Id.*). He noted K.K. had either a "slight problem" or "no problem" with respect to eleven of the thirteen activities. (*Id.*). However,

Mr. Burke noted K.K. had an "obvious problem" with respect to two activities: waiting to take turns and changing from one activity to another without being disruptive. (*Id.*).

In a March 2024 questionnaire, Ms. Linares did not observe a "serious problem" or a "very serious problem" with respect to any of the activities listed in the attending and completing tasks domain. (Tr. 290). She noted K.K. had no problems or a "slight problem" with eleven of the thirteen activities in this domain. (*Id.*). She observed an "obvious problem" with respect to the remaining two activities: refocusing on the task when necessary and waiting to take turns. (*Id.*).

K.K. underwent a psychological consultative examination performed by Steven O'Neal, Ph.D., in March 2024. (Tr. 705–06). K.K. displayed an anxious affect with low frustration tolerance. (Tr. 706). Dr. O'Neal noted K.K.'s "[p]hysical tempo appears above normal limits with significant hyperactivity and distractibility." (*Id.*). K.K.'s thoughts were intact and broadly goal-directed. (*Id.*). K.K.'s recent and remote memory appeared intact, though his judgment, insight, impulse control, attention, and concentration appeared below the normal range. (*Id.*). K.K.'s intellectual functioning appeared to be within the average range. (*Id.*).

K.K. attended counseling sessions at Phoenix Counseling Service. (Tr. 29, 621–27). A June 2024 treatment note indicated that K.K. was able to take and follow directions and had increased weekly compliance. (Tr. 29, 744). However, K.K. remained defiant and would throw things when he did not get his way. (*Id.*).

Finally, the ALJ considered the prior administrative medical findings of the State agency psychological and medical consultants at the initial and reconsideration levels. (Tr. 30, 70–72, 78–80). The State agency consultants found that K.K. had less than marked limitations with respect to attending and completing tasks. (Tr. 71, 78). The ALJ found the State agency consultants' findings persuasive and consistent with the evidence. (Tr. 30). *See* 20 C.F.R. § 416.920c(b)(2) ("The factors of supportability . . . and consistency . . . are the most important factors"); *Id.* § 416.920c(c)(1) (explaining the supportability factor); *Id.* § 416.920c(c)(2) (explaining the consistency factor). Substantial evidence supports the ALJ's finding of less than marked limitation in the domain of attending and completing tasks.

**2. Interacting and Relating with Others**

The domain of interacting and relating with others considers how well a child can "initiate and sustain emotional connections with others, develop and use the language of [the child's] community, cooperate with others, comply

with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). Preschool children should be able to socialize with children and adults, begin to prefer playmates of their own age, and start developing friendships with peers. *Id.* § 416.926a(i)(2)(iii). They should be able to use words instead of actions to express themselves; share, show affection, and offer to help; relate to caregivers with increasing independence; choose their own friends; and play cooperatively with other children without continual adult supervision. *Id.* They should also be able to initiate and participate in conversations, use increasingly complex vocabulary and grammar, and speak clearly enough that both familiar and unfamiliar listeners can understand them most of the time. *Id.*

A school-age child should be able, among other things, to: develop more lasting friendships with children who are their age; begin to understand how to work in groups to create projects and solve problems; have an increasing ability to understand another's point of view and to tolerate differences; and be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand. *Id.* § 416.926a(i)(2)(iv).

The ALJ found that K.K. has a less than marked limitation in this domain. (Tr. 30). The ALJ noted K.K. can play well with others but continues

to have behavioral issues when things do not go his way. (Tr. 30). The ALJ acknowledged there were several incident reports for behavior issues in 2023 to 2024. (Tr. 28, 269–80). However, the ALJ also stated that K.K.'s teachers reported mostly slight problems with K.K.'s social skills. (Tr. 30, 230, 291). Mr. Burke found K.K. had no problems or a "slight problem" with respect to the ten out of the thirteen activities with respect to interacting and relating with others. (Tr. 230). Ms. Linares found that K.K. had no problems or a "slight problem" in 10 of the 13 activities listed in this domain. (Tr. 291).

Additionally, the State agency medical and psychological consultants, whom the ALJ found persuasive, found that K.K. had a less than marked limitation with respect to interacting and relating with others. (Tr. 30, 71, 79). Accordingly, substantial evidence supports the ALJ's finding of less than marked limitation in the domain of interacting and relating with others.

**3. Ability to Care for Oneself**

The domain of caring for oneself considers how well the child maintains a healthy emotional and physical state, including how well he can get his physical and emotional needs met in appropriate ways, how he can cope with changes in his environment, and whether he can take care of his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). A preschool-age child should want to take care of many of his physical needs himself (e.g., putting on

shoes, getting a snack) and want to try doing some things he cannot do fully. *Id.* § 416.926a(k)(2)(iii). He should also begin to understand how to control behaviors that are not good for him (e.g., crossing the street without an adult). *Id.* School-age children should be independent in most day-to-day activities (e.g., dressing and bathing), although they may still need occasional reminders to do these routines. *Id.* § 416.926a(k)(iv).

The ALJ found that K.K. had less than a marked limitation in this domain. (Tr. 26, 30). In doing so, the ALJ recognized that the record showed K.K. had difficulty expressing frustration appropriately and modulating his behavior, but that he had shown improvement. (Tr. 30). A June 2024 treatment note indicated that K.K. was able to take and follow directions. (Tr. 29, 744). Additionally, K.K. could brush his teeth, wash his hands, and bathe, though he often needed help and supervision. (Tr. 30, 726). K.K. enjoyed playing on his iPad, watching videos, playing with cars and Legos, playing soccer, and swimming. (*Id.*).

Mr. Burke noted K.K. had no problem or a "slight problem" with respect to seven of the ten activities listed in this domain. (Tr. 232). Similarly, Ms. Linares found K.K. had no problems or a "slight problem" with respect to eight of the ten activities in this domain. (Tr. 293).

Additionally, the State agency's medical and psychological consultants, whom the ALJ found persuasive, found that K.K. had a less than marked limitation in the domain of caring for oneself. (Tr. 30, 71, 79). Accordingly, substantial evidence supports the ALJ's finding of less than a marked limitation in the domain of caring for himself.

**B. Subjective statements of K.K.'s grandmother.**

K.K.'s grandmother contends that the ALJ did not adequately evaluate her testimony. When a claimant (or his grandmother) attempts to prove disability based on subjective complaints, he must provide evidence confirming the severity of his alleged symptoms or evidence establishing that his medical condition could be reasonably expected to give rise to his alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

The ALJ found K.K.'s medically determinable impairments could reasonably be expected to cause the alleged symptoms but "the allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 27). The ALJ partially credited the subjective statements in the record and found the K.K. had "less than a marked limitation" in the six functional domains. (Tr. 26).

As discussed by the ALJ, K.K.'s teachers' questionnaires indicated K.K. had mostly no problems or slight problems in the various domains, including acquiring and using information, attending and completing tasks, interacting with others, moving about and manipulating objects, and caring for himself. (Tr. 27–28, 228–32, 289–93). K.K. was prescribed medication, attended counseling, and had a 504 plan in school. (Tr. 27, 29, 335-40, 431, 434, 442-43, 621-27, 744-45). In September 2022, K.K.'s grandmother reported that K.K. had made significant progress in his emotional regulation and that he was better able to redirect his behavior, though he continued to struggle with his frustration and listening skills. (Tr. 28, 560). The ALJ also noted that in December 2023, K.K.'s mother reported that K.K. was very smart, did well in class, but had difficulty staying focused. (Tr. 28, 688).

Additionally, George Grubbs, Psy.D., and William Prather, M.D., reviewed the record in January 2023 and found fewer than marked limitations in all six domains of functioning. (Tr. 70–72). Pauline Hightower, Psy.D., and Jessica Willert, M.D., reviewed the record at the reconsideration level in April 2024 and found less than marked limitations across the six domains of functioning. (Tr. 78–79).

The relevant medical records and school records provide substantial evidence to support the ALJ's evaluation of the subjective allegations and her

finding that K.K.'s impairments caused less than marked limitation in the domains of functioning. The Commissioner has the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). Even if the court disagrees with the ALJ's resolution of the factual issues, the ALJ's decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. *See Baker o/b/o Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989).

## VI. Conclusion

After a thorough review of the record, the undersigned finds that the ALJ's decision is supported by substantial evidence. Accordingly, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment in favor of the Commissioner and close the case.

**ENTERED** in Tampa, Florida, on September 14, 2026.

Amanda Arnold Sansone

AMANDA ARNOLD SANSONE
United States Magistrate Judge